UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BERNIE MALIXI and KATHERINE A.           NO. CIV. 2:12-1749 WBS CKD
MALIXI,

     Plaintiffs,                     MEMORANDUM AND ORDER RE:
                                         MOTION TO DISMISS
   v.

U.S. BANK, N.A., DOWNEY
SAVINGS AND LOAN ASSOCIATION,
F.A., DSL SERVICE COMPANY, a
California corporation, FCI
LENDER SERVICES, and DOES 1-10
inclusive,

     Defendants.
_____/

----oo0oo----

       Plaintiffs Bernie Malixi and Katherine A. Malixi filed

suit in state court against defendants U.S. Bank, N.A. ("U.S.

Bank"), Downey Savings and Loan Association ("Downey Savings"),

DSL Service Company ("DSL Service"), and FCI Lender Services

("FCI"), bringing claims arising from defendants' allegedly

wrongful conduct related to a residential loan.  U.S. Bank,

successor in interest to the Federal Deposit Insurance

1

Corporation ("FDIC") as receiver for Downey Savings, FCI, and DSL Service (collectively "defendants") then removed the proceeding to this court on the basis of federal question jurisdiction. (Docket No. 1.)  Currently before the court is defendants' motion to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 4.)  Counsel for plaintiffs did not bother to file an opposition or statement of non-opposition as required by Local Rule 230(c).

I.   <u>Factual and Procedural Background</u>

         Plaintiffs allegedly obtained a loan in the amount of $617,000 from Downey Savings, which was secured by a Deed of Trust recorded against the property located at 101 Diamond Grove Court in Roseville, California ("the Diamond Grove property"). (Notice of Removal Ex. A ("Compl.") ¶ 10 (Docket No. 1-1); Majam-Simpson Decl. Ex. 1 (Docket No. 4-3).)  Following the closure of Downey Savings and appointment of the FDIC as receiver by the Office of Thrift Supervision, U.S. Bank purchased various banking operations and assets previously owned by Downey Savings, including plaintiffs' loan.  (Compl. ¶ 13; Defs.' Memo. in Supp. of Mot. to Dismiss at 1:18-21 (Docket No. 4-1).)

         A Notice of Default listing the current default as $27,300.21 was recorded on April 20, 2011, and a Notice of Trustee's Sale for August 30, 2011, was recorded on August 1, 2011.  (Majam-Simpson Decl. Exs. 2, 4.)  U.S. Bank purchased the property for $288,750.00 at a foreclosure sale on April 9, 2012, and a Trustee's Deed Upon Sale was recorded on Wednesday, April 11, 2012.  (<u>Id.</u> Ex. 5.)

1    The allegations in the Complaint primarily focus on
2  alleged improprieties in the loan's "handling and processing,"
3  (Compl. ¶¶ 28-38), and on errors that occurred when the loan was
4  securitized, (id. ¶¶ 39-48).  Plaintiffs allege that their loan
5  was "improperly handled from its inception" because no defendant
6  ever performed "due diligence in investigation [sic] the legal
7  requirements that this loan should have been processed with."
8  (Id. ¶ 28.)  They further allege that sales of the loan occurred
9  without the necessary assignments of the Deed of Trust and
10 because the Note and the Deed of Trust were separated, (id. ¶¶ 2-
11 4, 33-34, 46, 48), and that all defendants "unlawfully sold,
12 assigned, and/or transferred [their] ownership and interest in a
13 Promissory Note and Deed of Trust," (id. ¶ 2).  As a result,
14 plaintiffs allege that defendants "cannot establish possession
15 and proper transfer and endorsement" of these documents and hold
16 an "invalid and unperfected security interest" in the Diamond
17 Grove property.  (Id. ¶¶ 4, 7.)

18    The Complaint also alleges problems with the issuance
19 of the loan and with the foreclosure process.  First, it alleges
20 that plaintiffs' loan was the result of deceptive and predatory
21 lending because Downey Savings failed to verify that they had the
22 ability to "repay the credit that [had] been extended."  (Id. ¶
23 21.)

24    Second, it alleges that no valid Notice of Default was
25 recorded or sent to plaintiffs and that the recorded Notice of
26 Default is invalid.  (Id. ¶¶ 35-36.)  According to plaintiffs,
27 the notice is invalid because it incorrectly "states that for
28 Plaintiff [sic] to find out the amount she [owes] or to arrange

3

payment, she [sic] must contact 'FCI LENDER SERVICES,'" when, as
of the date of the notice, FCI Lender Services had no rights to
the property, (id. ¶ 35).  The Notice of Default submitted by
defendants, however, shows that it instructs plaintiffs to
contact U.S. Bank care of FCI Lender Services to find the amount
they owe or to arrange payment.  (Majam-Simpson Decl. Ex. 2.)
Plaintiffs do not allege that U.S. Bank was not the beneficiary.

Finally, plaintiffs additionally allege that they
attempted to resolve the controversy that had arisen between the
parties by "seeking Clarification of the specifics" of the loan
agreement, but that no clarification was provided.  (Id. ¶¶ 6,
17-19.)  They allege that "[d]ue to DOWNEY having breeched [sic]
their duty to respond, there is in existence a Meeting of the
Minds between the two Parties.  This new Agreement between the
Parties stipulates in part that there was a voidable Contact
[sic] originally set forth."  (Id. ¶ 26.)  The Complaint does not
articulate the issues plaintiffs were attempting to clarify or
the terms of this alleged meeting of the minds.

Plaintiffs bring claims for (1) declaratory relief, (2)
injunctive relief, (3) breach of the implied covenant of good
faith and fair dealing, (4) rescission, (5) unfair and deceptive
acts and practices, (6) cancellation, (7) breach of fiduciary
duty, (8) unconscionability, (9) quiet title, (10) wrongful
foreclosure, (11) slander of title, (12) securities fraud, (13)
trespass on contract, (14) negligence, (15) violation of the
California Unfair Competition Law ("UCL"), (16) violation of the

4

1  Real Estate Settlement Procedures Act ("RESPA"), and (17) fraud.[1]

2  (Docket No. 1, Ex. 1.)  Now before the court is defendants'

3  unopposed motion to dismiss all claims for failure to state a

4  claim pursuant to Rule 12(b).  (Docket No. 4.)

5  II.  Request for Judicial Notice

6        In general, a court may not consider items outside the

7  pleadings when deciding a motion to dismiss, but it may consider

8  items of which it can take judicial notice.  Barron v. Reich, 13

9  F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial

10  notice of facts "not subject to reasonable dispute" because they

11  are either "(1) generally known within the territorial

12  jurisdiction of the trial court or (2) capable of accurate and

13  ready determination by resort to sources whose accuracy cannot

14  reasonably be questioned."  Fed. R. Evid. 201.  Judicial notice

15  may properly be taken of matters of public record outside the

16  pleadings.  See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504

17  (9th Cir. 1986).

18        Defendants request that the court judicially notice

19  several recorded documents pertaining to the Diamond Grove

20  property.  (See Defs.' Req. for Judicial Notice Exs. 1-5 (Docket

21  No. 4-2).)  The court will take judicial notice of these

22  documents, since they are matters of public record whose accuracy

23  cannot be questioned.  See Lee v. City of Los Angeles, 250 F.3d

24  668, 689 (9th Cir. 2001).

25  III.  Discussion

26

27        [1]    The caption of plaintiffs' Complaint also lists an

28  action for wrongful foreclosure.  However, no claim for wrongful
   foreclosure is found in the Complaint.

1    To survive a motion to dismiss, a plaintiff must plead

2  "only enough facts to state a claim to relief that is plausible

3  on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

4  (2007).  This "plausibility standard," however, "asks for more

5  than a sheer possibility that a defendant has acted unlawfully,"

6  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a

7  complaint pleads facts that are 'merely consistent with' a

8  defendant's liability, it 'stops short of the line between

9  possibility and plausibility of entitlement to relief.'"  Id.

10  (quoting Twombly, 550 U.S. at 557).  In deciding whether a

11  plaintiff has stated a claim, the court must accept the

12  allegations in the complaint as true and draw all reasonable

13  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

14  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

15  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

16  (1972).

17    A.  Declaratory Relief

18    Under California law, a request for declaratory relief

19  "operates prospectively, and not merely for the redress of past

20  wrongs." Britz Fertilizers, Inc. v. Bayer Corp., 665 F. Supp. 2d

21  1142, 1173 (E.D. Cal. 2009) (quoting Babb v. Superior Court, 3

22  Cal. 3d 841, 848 (1971)).  This is because one of the purposes of

23  a declaratory relief is "to enable the parties to shape their

24  conduct so as to avoid a breach." Id.  When a litigant has "a

25  fully matured cause of action for money," he must seek damages as

26  his remedy and not declaratory relief.  Canova v. Trs. of

27  Imperial Irrigation Dist. Emp. Pension Plan, 150 Cal. App. 4th

28  1487, 1497 (4th Dist. 2007).  He may not use a claim for

6

declaratory relief as a "superfluous 'second cause of action for the determination of identical issues.'"  <u>Britz</u>, 665 F. Supp. 2d at 1173 (quoting <u>Hood v. Superior Court</u>, 33 Cal. App. 4th 319, 324 (1995)).

Plaintiffs request that the court declare that defendants have no right to foreclose on the Diamond Grove property.  A foreclosure sale, however, has already occurred and the remainder of their claims seek to challenge the validity of that sale.  Because plaintiffs' claim for declaratory relief would only address past wrongs and would add nothing to the proceeding in terms of either issues addressed or relief sought, it is inappropriate.  <u>See Mangindin v. Washington Mut. Bank</u>, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) (dismissing declaratory relief claim as duplicative and unnecessary where plaintiffs sought declaration that defendants did not have the right to foreclose in addition to bringing a variety of claims challenging foreclosure).  Accordingly, the court will grant defendants' motion to dismiss this claim.

B.   <u>Injunctive Relief</u>

Under California law, requests for injunctive relief have been consistently classified as remedies and not valid causes of action in their own rights.  <u>See e.g.</u>, <u>Shell Oil Co. v. Richter</u>, 52 Cal. App. 2d 164, 168 (4th Dist. 1942) ("Injunctive relief is a remedy and not, in itself, a cause of action.").  Accordingly, the court will grant defendants' motion to dismiss plaintiffs' second cause of action.

C.   <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

7

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999) (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992)). "A typical formulation of the burden imposed by the implied covenant of good faith and fair dealing is 'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2005) (quoting Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973)).

It appears that plaintiffs allege that all defendants owed them a duty of good faith and fair dealing on the basis of the loan agreement that plaintiffs entered into with Downey Savings. The court does not see, however, how any defendant other then Downey Savings or U.S. Bank as successor in interest to Downey Savings can be said to owe plaintiffs a duty based upon a contract to which it was not a party.

Additionally, nowhere in the Complaint do plaintiffs explain how any defendant's action interfered with their ability to receive the benefits of the loan agreement. Plaintiffs could not have had a legitimate expectation that they could retain ownership of their home without making the required loan payments. All the Complaint contains are allegations that defendants "enjoyed substantial discretionary power affecting" plaintiffs' rights and that they "willfully breached their implied covenant of good faith and fair dealing," causing plaintiffs "injury and . . . the threat of loss of [their] personal home." (Compl. ¶¶ 61-62.) Such conclusory allegations

8

1  simply do not meet federal pleading standards.  Accordingly, the
2  court will grant defendants' motion to dismiss plaintiffs' claim
3  for breach of the implied covenant of good faith and fair
4  dealing.

5      D.   Fraud and Unfair and Deceptive Business Acts and
6           Practices

7      In California, the essential elements of a claim for
8  fraud are "(a) a misrepresentation (false representation,
9  concealment, or nondisclosure); (b) knowledge of falsity (or
10 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)
11 justifiable reliance; and (e) resulting damage." In re Estate of
12 Young, 160 Cal. App. 4th 62, 79 (2008).  Under the heightened
13 pleading requirements for claims of fraud under Federal Rule of
14 Civil Procedure 9(b), "a party must state with particularity the
15 circumstances constituting the fraud." Fed. R. Civ. P. 9(b).
16 The plaintiffs must include the "who, what, when, where, and how"
17 of the fraud. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1006
18 (9th Cir. 2003) (citation omitted).  "The plaintiff must set
19 forth what is false or misleading about a statement, and why it
20 is false." Decker v. Glenfed, Inc., 42 F.3d 1541, 1548 (9th Cir.
21 1994).  Additionally, "[w]here multiple defendants are asked to
22 respond to allegations of fraud, the complaint must inform each
23 defendant of his alleged participation in the fraud." Ricon v.
24 Reconstrust Co., Civ. No. 09-937, 2009 WL 2407396, at *3 (S.D.
25 Cal. Aug. 4, 2009) (quoting DiVittorio v. Equidyne Extractive
26 Indus., 822 F.2d 1242, 1247 (2d Cir. 1987)).

27     Rule 9(b) "may apply to claims -- that although lacking
28 fraud as an element -- are 'grounded' or 'sound' in fraud." Id.

9

1  (quoting <u>Vess v. Ciba-Geigy Corp.</u>, 317 F.3d 1097, 1103-04 (9th

2  Cir. 2003)).  A claim is "grounded in fraud" when it alleges a

3  unified course of fraudulent conduct.  <u>Id.</u> at 624.  Plaintiffs'

4  fifth cause of action for unfair and deceptive business acts and

5  practices is based upon defendants' allegedly fraudulent

6  preparation and procurement of documents to "fabricate the

7  missing gaps in the chain of title or to falsely demonstrate

8  compliance" with the Pooling Service Agreement.  (Compl. ¶ 69.)

9  This claim, therefore, is subject to the heightened requirements

10  of Rule 9.

11       Plaintiffs' allegations are far from sufficient to

12  survive a motion to dismiss.  In relation to the fraud claim,

13  plaintiffs merely allege that "Defendants have made several

14  representations to Plaintiffs with regard to material facts" and

15  that "Defendants intentionally and fraudulently converted

16  Plaintiffs' right, title, and interest to their property" and

17  acted with the intent to "induce Plaintiffs into believing they

18  had authority to start the foreclosure process by recording a

19  false document." (Compl. ¶¶ 119-20.)  The allegations related to

20  their claims for unfair and deceptive business acts are no more

21  specific.

22       Such conclusory allegations do not include anything

23  approaching an explanation of the "who, what, when, where, and

24  how" of the alleged fraud.  They are also insufficient to explain

25  how each defendant participated in a fraudulent scheme.  <u>See</u>

26  <u>Swartz v. KPMG, LLP</u>, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule

27  9(b) does not allow a complaint merely to lump multiple

28  defendants together but require[s] plaintiffs to differentiate

1   the allegations when suing more than one defendant . . . and

2   inform each defendant separately of the allegations surrounding

3   his alleged participation in the fraud." (citation omitted)).

4        Additionally, plaintiffs do not allege how the actions

5   out of which their fraud-based claims arise caused them any

6   damage.  To survive a motion to dismiss, the complaint "must show

7   a cause and effect relationship between the fraud and damages

8   sought; otherwise no cause of action is stated." Small v. Fritz

9   Cos., 30 Cal. 4th 167, 202 (2003) (citation omitted).

10       Plaintiffs allege that defendants' actions caused them

11  damages because their property is now subject to foreclosure.

12  (Compl. ¶ 71.)  In actual fact, recorded documents indicate that

13  the property has already been sold at a foreclosure sale.  The

14  Trustee's Deed Upon Sale shows that at the time of the sale the

15  amount of unpaid debt together with costs totaled $664,665.14.

16  Plaintiffs do not dispute that they were in default.  Nor do they

17  allege that the alleged fraudulent conduct caused them to fall

18  behind on their mortgage or resulted in their home being sold at

19  a foreclosure sale.  It would appear, then, that plaintiffs'

20  default, not any actions by defendants, was the reason that their

21  home faces or faced foreclosure.

22       Accordingly, plaintiffs' allegations fail to meet Rule

23  9(b)'s heightened pleading requirements, and the court will grant

24  defendants' motion to dismiss plaintiffs' claims for fraud and

25  unfair and deceptive business acts and practices.

26       E.   Rescission and Cancellation

27       "A written instrument, in respect to which there is a

28  reasonable apprehension that if left outstanding it may cause

11

1  serious injury to a person against whom it is void or voidable,

2  may, upon his application, be so adjudged, and ordered to be

3  delivered up or canceled."  Cal. Civ. Code § 3412.

4          To 'cancel' a contract means to abrogate so much of it as
           remains unperformed.  It differs from 'rescission,' which
5          means to restore the parties to their former position.
           The one refers to the state of things at the time of the
6          cancellation; the other to the state of things existing
           when the contract was made."
7

8  <u>Young v. Flickinger</u>, 75 Cal. App. 171, 174 (1925); <u>accord</u> <u>Phleger</u>

9  <u>v. Countrywide Home Loans, Inc.</u>, Civ. No. 07-01686, 2009 WL

10 537189, at *15 (N.D. Cal. Mar. 3, 2009).

11         Plaintiffs allege that they are entitled to rescind

12 their loan due to improper securitization, fraudulent

13 concealment, and on public policy grounds.  They do not cite any

14 statute under which they seek rescission or allege that they have

15 taken any actions to rescind the loan.  As discussed above,

16 plaintiffs have failed to sufficiently allege fraudulent actions

17 by any defendants.  They also fail to explain what public policy

18 would be served by rescinding their loan or why any alleged

19 defects in the securitization process have harmed them such that

20 they should be entitled to rescind their loan.  Therefore the

21 court will grant defendants' motion to dismiss plaintiffs'

22 rescission claim.

23         Plaintiffs seek cancellation on a variety of grounds.

24 However, they do not explain how allowing the Deed of Trust to

25 stand will cause them any injury.  They have therefore not

26 sufficiently alleged that they are entitled to cancel their Deed

27 of Trust.  Accordingly, the court will grant defendants' motion

28 to dismiss plaintiffs' cancellation claim.

1          F.   <u>Breach of Fiduciary Duty</u>

2          The elements of a claim for breach of fiduciary duty

3     are (1) existence of a fiduciary relationship; (2) breach of the

4     fiduciary duty; and (3) damage proximately caused by that breach.

5     <u>Roberts v. Lomanto</u>, 112 Cal. App. 4th 1553, 1562 (3d Dist. 2003).

6     "[A]s a general rule, a financial institution owes no duty of

7     care to a borrower when the institution's involvement in the loan

8     transaction does not exceed the scope of its conventional role as

9     a mere lender of money." <u>Bridgeman v. United States</u>, No. 10-

10    01457, 2011 U.S. Dist. LEXIS 6059, at *52 (E.D. Cal. Jan. 21,

11    2011) (citing <u>Nymark v. Heart Fed. Savs. & Loan Ass'n</u>, 231 Cal.

12    App. 3d 1089 (3d Dist. 1991)).

13         Plaintiffs allege that defendants were in breach of a

14    fiduciary duty when they failed to advise plaintiffs that they

15    would have a "likelihood of defaulting on the loan" because

16    defendants "have a fiduciary duty to the Alleged Borrower to not

17    place them in that loan (in harms way)." (Compl. ¶ 80.)

18    Initially, the court fails to see how such allegations would

19    apply to any defendant not involved in the propagation of the

20    loan.  More seriously, there are no allegations that any

21    defendant acted outside the conventional role of money lender in

22    a manner that would justify finding a fiduciary duty.

23    Accordingly, the court will grant defendants' motion to dismiss

24    this claim.

25         G.   <u>Unconscionability</u>

26         Plaintiffs purport to bring a claim for

27    unconscionability.  The doctrine of unconscionability, however,

28    as the Complaint itself recognizes, provides that if a court

1  finds that a contract or any clause of a contract was

2  unconscionable at the time it was made, "the court may refuse to

3  enforce the contract, or it may enforce the remainder of the

4  contract without the unconscionable clause, or it may so limit

5  the application of any unconscionable clause as to avoid any

6  unconscionable result." (Compl. ¶ 86.)

7         Unconscionability "has historically provided only a

8  defense to enforcement of a contract, and normally cannot be used

9  offensively to obtain mandatory injunctive relief." Cal. Grocers

10 Ass'n v. Bank of Am., 22 Cal. App. 4th 205, 217 (1st Dist. 1994)

11 (citations omitted). As embodied in California Civil Code

12 section 1670.5, "the doctrine is phrased in defensive terms" and

13 "does not in itself create an affirmative cause of action." Id.

14 While an affirmative cause of action may be provided by statute,

15 id., the Complaint does not indicate that plaintiffs bring their

16 action under any such statute. Accordingly, the court will grant

17 defendants' motion to dismiss plaintiffs' claim for

18 unconscionability.

19     H.   Quiet Title

20         California Code of Civil Procedure section 761.020

21 states that a claim to quiet title requires: (1) a verified

22 complaint, (2) a description of the property, (3) the title to

23 which a determination is sought, (4) the adverse claims to the

24 title against which a determination is sought, (5) the date as of

25 which the determination is sought, and (6) a prayer for the

26 determination of the title. Cal. Code Civil Proc. § 761.020.

27         The tender rule applies to a quiet title action.

28 Kozhayev v. Am.'s Wholesale Lender, Civ. No. 09-2841 FCD DAD,

2010 WL 3036001, at *5 (E.D. Cal. Aug. 2, 2010); <u>see also</u>
<u>Shimpones v. Stickney</u>, 219 Cal. 637, 649 (1934).  A "quiet title
action is doomed in the absence of Plaintiffs' tender of the full
amount owed." <u>Gjurovich v. Cal.</u>, Civ. No. 1:10-01871 LJO SMS,
2010 WL 4321604, at *8 (E.D. Cal. Oct. 26, 2010).  Here, among
other deficiencies, plaintiffs have not alleged tender or the
ability to tender.  Accordingly, the court will grant defendants'
motion to dismiss the quiet title claim.

     I.   <u>Slander of Title</u>

       To state a claim for slander of title, a plaintiff must
establish: "1) a publication; 2) which is without privilege or
justification; 3) which is false; and 4) which causes direct and
immediate pecuniary loss." <u>Jackson v. Ocwen Loan Servicing, LLC</u>,
Civ. No. 2:10-00711 MCE GGH, 2010 WL 3294397, at *4 (E.D. Cal.
Aug. 20, 2010) (citing <u>Manhattan Loft, LLC v. Mercury Liquors,</u>
<u>Inc.</u>, 173 Cal. App. 4th 1040, 1050-51 (2d Dist. 2009)).
Plaintiffs base their slander of title claim on the alleged false
recording of "various documents including a Notice of Trustee
[sic] Sale."  The only recorded document that plaintiffs allege
to be false other than the Notice of Trustee's Sale is a Notice
of Default.  (Compl. ¶ 35.)

       Notices of sale and notices of default, however, are
privileged communications under California law that cannot form
the basis for a slander of title claim absent an allegation of
malice. <u>Ruiz v. SunTrust Mortg., Inc.</u>, Civ. No. 12-0878, 2012 WL
3028001, at *13 (E.D. Cal. July 24, 2012) (citing Cal. Civ. Code
§ 2924(d)); <u>Kachlon v. Markowitz</u>, 168 Cal. App. 4th 316, 333-34
(2d Dist. 2008).  No malice is alleged here.

15

1    Additionally, plaintiffs do not dispute that they were

2    in default on their loan, so it is not clear how these false

3    documents would have caused plaintiffs damages.  Accordingly, the

4    court will grant defendants' motion to dismiss plaintiffs'

5    slander of title claim.

6         J.    Securities Fraud

7         Plaintiffs' claim for securities fraud alleges that

8    "Defendants have committed securities fraud as JPMORGAN under

9    rule 144A by privately securitizing their notes in 2001 without

10   disclosing this as required." (Compl. ¶ 102.)  The court can

11   make neither heads nor tails of this statement.  It has no idea

12   what Rule 144A is or how JP Morgan, who is not a defendant, has

13   any relation to this proceeding or to the other defendants.  It

14   is also not clear how plaintiffs would have standing to bring a

15   claim for violations of Rule 144A, whatever that may be, as they

16   do not explain how the alleged violations caused them any

17   particularized harm.  Accordingly, the court will grant

18   defendants' motion to dismiss plaintiffs' claim for "securities

19   fraud."

20        K.    Trespass on Contract

21        Plaintiffs' allegations in support of their trespass on

22   contract action consist of only one paragraph that references

23   their request for "Clarification" on the specifics of the

24   "Contract." (Compl. ¶ 103.)  As with plaintiffs' claim for

25   securities fraud, the court is at a loss to understand these

26   allegations.

27        First, the court does not know what a claim for

28   trespass on contract is, and conducting a search for the term in

16

California cases returned no instructive results.  As plaintiffs
have not seen fit to file the opposition or statement of non-
opposition required by local rules, the court does not have the
benefit of their explanation on the matter.

Second, plaintiffs' allegations regarding their request
for clarification are vague.  As a result, the court, and
therefore the defendants, cannot have a clear understanding of
what conduct is alleged to have resulted in trespass on contract.
It is not even clear what contract is involved (although the
court would have to guess that plaintiffs are referring to the
loan agreement they entered into with Downey Savings) or what
matters required clarification.

For all of these reasons, the court will grant
defendants' motion to dismiss plaintiffs' "trespass on contract"
claim.

L.   <u>Negligence</u>

Plaintiffs base their negligence cause of action on
allegations that defendants acted "as brokers of loans" and
"direct[ed] Plaintiffs into a laon [sic] for which Plaintiffs
were not qualified," and "fail[ed] to perform acts in such a
manner as to not cause Plaintiffs harm."  (Compl. ¶¶ 104-106.)
To prove a cause of action for negligence, plaintiff must show
"(1) a legal duty to use reasonable care, (2) breach of that
duty, and (3) proximate cause between the breach and (4) the
plaintiff's injury."  <u>Mendoza v. City of Los Angeles</u>, 66 Cal.
App. 4th 1333, 1339 (2d Dist. 1998).  "The existence of a legal
duty to use reasonable care in a particular factual situation is
a question of law for the court to decide."  <u>Vasquez v.</u>

1  <u>Residential Invs., Inc.</u>, 118 Cal. App. 4th 269, 278 (4th Dist.
2  2004).

3          Plaintiffs only summarily allege that "as a result of
4  the Defendants' negligence, Plaintiffs are entitled to damages."
5  (Compl. ¶ 108.)  These kinds of conclusory allegations are
6  insufficient to meet pleading requirements.  Accordingly, the
7  court will grant defendants' motion to dismiss plaintiffs'
8  negligence claim.

9          M.   <u>RESPA</u>

10         Plaintiffs allege that defendants violated RESPA by
11  failing to comply with written disclosure requirements at the
12  time that they entered into the loan agreement in May 2006 and
13  again by failing to respond to plaintiffs' Qualified Written
14  Request ("QWR").

15         With respect to any failure to provide the required
16  disclosures at the time of closing, claims based on such failures
17  are time barred.  Depending on which specific provision of the
18  statute is asserted, a RESPA claim must be made within one to
19  three years after the RESPA violation.  12 U.S.C. § 2614.  "The
20  RESPA statute of limitations generally begins to run no later
21  than the date of actual disclosure of actions constituting an
22  alleged violation.  Typically, in cases involving loan documents,
23  the statute begins to run when the documents are signed unless
24  evidence is presented to override this assumption."  <u>Metcalf v.</u>
25  <u>Drexel Lending Grp.</u>, Civ. No. 08-00731, 2008 WL 4748134, at *3
26  (S.D. Cal. Oct. 29, 2008) (citation omitted).

27         Here, more than three years have passed since the
28  signing of the loan documents, and plaintiffs have not alleged

1   any facts to support tolling.    Thus, plaintiffs' RESPA claim is

2   time-barred.

3           With respect to a failure by one or more defendants to

4   respond to plaintiffs' QWR, § 2605 of RESPA relates to the

5   disclosures and communications required regarding the servicing

6   of mortgage loans, and provides that loan servicers have a duty

7   to respond to QWRs from borrowers asking for information relating

8   to the servicing of their loan.  See 12 U.S.C. § 2605(e).  Loan

9   servicers have 60 days after the receipt of a QWR to respond to

10  the borrower inquiry.  Id. § 2605(e)(2).

11          Plaintiffs allege that they mailed a QWR to one or more

12  defendants at some point in time and that they never received a

13  response as required by the statute.  (Compl. ¶ 113.)  Not only

14  did plaintiffs fail to include such basic information as when and

15  to whom they mailed their QWQ, but they also failed to allege

16  that any defendant is in fact the servicer of their loan.

17  Instead, they simply allege that they "are not certain at this

18  time exactly which of the Defendants was actually the servicer of

19  the loan at any given time." (Id. ¶ 111.)  "Without alleging

20  that [defendants are] a 'loan servicer' under RESPA plaintiffs

21  cannot show that [defendants] owed any duty to respond to their

22  QWR, and accordingly plaintiffs' RESPA claim . . . must be

23  dismissed."  Castaneda v. Saxon Mortg. Servs., Inc., 687 F. Supp.

24  2d 1191, 1199 (E.D. Cal. 2009) (dismissing RESPA claim where

25  plaintiffs made identical allegations that they "are not certain

26  at this time exactly which of [d]efendants was actually the

27  servicer of the loan at any given time").

28          N.   Violation of California Business and Profession Code

1        Section 17200

2        California's UCL prohibits "any unlawful, unfair or

3   fraudulent business act or practice . . . ."  Cal. Bus. & Prof.

4   Code § 17200.   This cause of action is generally derivative of

5   some other illegal conduct or fraud committed by a defendant.

6   Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (2d

7   Dist. 1993).   Plaintiffs base their UCL claim on defendants'

8   alleged "unlawful and fraudulent business practices."  (Compl. ¶

9   116.)

10       "Under its 'unlawful' prong, 'the UCL borrows

11  violations of other laws . . . and makes those unlawful practices

12  actionable under the UCL.'"  Berryman v. Merit Prop. Mgmt., Inc.,

13  152 Cal. App. 4th 1544, 1554 (4th Dist. 2007) (quoting Lazar v.

14  Hertz Corp., 69 Cal. App. 4th 1494, 1505 (1st Dist. 1999)).

15  "Thus, a violation of another law is a predicate for stating a

16  cause of action under the UCL's unlawful prong."  Id.  Because

17  the court will grant defendants' motion to dismiss plaintiffs'

18  other claims and plaintiffs do not allege the violation of any

19  additional law as the basis for their UCL claim, the court must

20  also grant defendants' motion to dismiss plaintiffs' UCL claim.

21       IV.   Sanctions

22       Plaintiffs' attorney failed to file any papers in

23  response to the defendants' motion to dismiss.   For the most

24  part, the motion was undefensible, and plaintiffs could not be

25  expected to file any opposition that would pass Rule 11 scrutiny.

26  However, even in those circumstances the Local Rules require

27  counsel to file a statement of non-opposition to the motion.

28  Specifically, according to Local Rule 230(c), opposition or a

statement of non-opposition to the granting of a motion must be filed and served not less than fourteen days preceding the noticed hearing date.  Although not required to do so, the court also attempted to contact plaintiffs' counsel to inquire whether plaintiffs would be filing an opposition, but the counsel did not reply.

Local Rule 110 authorizes the court to impose sanctions for "[f]ailure of counsel or of a party to comply with these Rules."  In determining the amount of the sanctions, the court also takes into account the frivolous nature of the bulk of plaintiffs' allegations.  Accordingly, the court will sanction plaintiffs' counsel, Clifford B. Scherer, in the amount $1,000.00 payable to the Clerk of the Court within ten days from the date of this Order, unless he shows good cause for his failure to comply with the Local Rules.

IT IS THEREFORE ORDERED that defendants' motion to dismiss be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that within ten days from the date of this Order Clifford B. Scherer shall either (1) pay sanctions in the amount of $1,000.00 to the Clerk of the Court, or (2) submit a statement of good cause explaining his failure to comply with Local Rule 230(c).

Plaintiffs have twenty days from the date of this Order to file an amended complaint, if they can do so consistent with this Order.

DATED:     August 9, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

21